39 So.2d 894

**STATE ex rel. DORAN v. DORAN et al.**

Nos. 39244–39247.

March 21, 1949.

Joe J. Tritico, of Lake Charles, for relator.

Plauche & Stockwell, of Lake Charles, for respondent.

FOURNET, Justice.

Mary J. Doran obtained a writ of habeas corpus from the Fourteenth Judicial District Court directed to her former husband, Edward J. Doran, Jr., and his mother, Mrs. Edward J. Doran, Sr., ordering them to produce her four-year-old minor son, Edward J. Doran, III, on her petition alleging that although she had the physical custody of the child under an interlocutory judgment of divorce granted by the Superior Court in and for the City and County of San Francisco, California, the respondent Edward J. Doran, Jr., on the pretext of taking the child fishing with her consent, illegally took him from California to Lake Charles, Calcasieu Parish, Louisiana, where he is now being unlawfully detained.

Mrs. Doran, Sr., made no appearance and the respondent Edward J. Doran, Jr., instead of producing the child as directed, excepted to the court's jurisdiction on the ground that to the best of his knowledge,

information, and belief the minor was not on, prior or subsequent to, October 22, 1948, the day the writ was issued, within the jurisdiction of the court.

The court first took the position that this exception was an answer and ordered the case to trial on the merits. However, the judge later permitted the respondent Doran to offer evidence in support of his exception to the jurisdiction although in the meantime he had filed an answer in which he admitted the divorce and that the physical custody of the child had been awarded his former wife. But, invoking the constitutional guarantee (5th Amendment to the constitution of the United States and Section 11 of Article I of the Louisiana Constitution of 1921) that no one can be compelled to give evidence against himself that may subject him to criminal prosecution, he declined to answer the allegations of the petition charging he had taken the child from California to Lake Charles and was there illegally detaining him for the reason that there was pending against him in the Municipal Court of the City and County of San Francisco, California, a charge of having stolen the child in violation of Section 278 of the California Penal Code and he was, at that time, under bond following his arrest in Lake Charles on a warrant forwarded there pursuant to such charge. In this answer the respondent also gave a detailed statement of certain events leading up to the divorce and set out incidents relative to his wife's conduct

which he claimed render her unfit to have the custody of the child.

The only evidence in the record other than the testimony of Mrs. D'Edna Chamberlain, an employee in the juvenile office of Calcasieu Parish who was placed on the stand for the purpose of impeaching Doran's testimony that he had not told her in the courthouse in Lake Charles on September 30, 1948, he had brought the child back and had it with him on that day, is that of the respondent Doran who took the stand for the limited purpose of showing the child was not within the jurisdiction of the court within 3 days prior to the time the suit was filed. After Doran testified he was a resident of Calcasieu Parish, that as one of the respondents in the case he had been served with a copy of the petition on October 23, 1948, and that beginning on October 18 and extending through October 23 the minor child was not, to the best of his knowledge, within the jurisdiction of the court, the respondent rested. On cross-examination, Doran was asked whether he had had the child in Calcasieu on or about September 30, 1948, and when he refused to answer he was held in contempt of court and sentenced to serve 10 days in jail.

The judge, after taking the case under advisement, overruled the plea to the jurisdiction and made the rule absolute, ordering the respondent Doran to forthwith surrender the minor child, Edward J. Doran, III, to the petitioner.

The matter is now before us on writs granted the respondent Edward J. Doran, Jr., and presents for our consideration primarily the right of the respondent Doran to proceed as he did, i. e., plead to the jurisdiction of the court instead of following the mandatory procedure outlined in the Code of Practice to be followed, and, secondarily, the court's right to hold the respondent in contempt under the particular facts of this case.

Clearly on the prima facie case made out in petitioner's application it was the duty of the judge to issue a writ of habeas corpus and when this writ was duly served on the respondent Doran it then became his mandatory duty to "obey and return the order without delay to the court," (Article 805 of the Code of Practice) either by producing the minor, if the child was in his custody or was confined by him, making on the back of the order of the court, or separately, his answer in writing, (Article 806) declaring positively whether or not he had the minor in his power or custody and by what authority he was detaining him, (Article 807). If the minor was not confined by him and had not been detained by him within three days preceding the service, or had been transferred to the custody of another, then it was Doran's duty to "state particularly in his answer to whom, at what time, for what cause, and by what authority, he made the transfer." Article 808.

The writ of habeas corpus, originating in the common law but guaranteed under the federal and state constitutions, is designed as a speedy and efficient method of affording a judicial inquiry into the legality of the restraint under which a person is held. It is not controlled by the procedure pursued in the ordinary litigation but by the specific procedure outlined in the Code of Practice. The response of the respondent in such a case is not to the petition filed, but to the writ issued by the judge pursuant to such petition. The Code of Practice does not authorize, and we do not think the judge should have sanctioned, the procedure followed by the respondent here. When Doran failed to follow the procedure set out in the Code of Practice, it was well within the province of the judge issuing the writ, and it was his duty, to decline to proceed with the hearing until the subject child was either produced in court or a satisfactory explanation given by Doran as to why it could or should not be produced. If the respondent failed to comply with such an order, then the trial judge should have held him in contempt of court. To hold otherwise would be to allow the beneficent purpose and the wholesome effects of this writ to be dissipated by subtle objections, technical niceties, and legal refinements. We must, therefore, conclude that the trial judge erred in ordering the respondent to forthwith produce the child in court before proper response had been made to the writ, particularly since the evidence adduced fails

to disclose the detention of the child and his whereabouts. 25 Am.Jur. 243, Sections 144 and 145; 84 A.L.R. 812. See, also, In re Knott, 162 Mich. 10, 126 N.W. 1040.

The question of jurisdiction can only arise after the respondent has made proper return and the case of Ahrens et al. v. Clark, Attorney General, 335 U.S. 188, 68 S.Ct. 1443, relied on by Doran is not controlling here.

In order to determine whether the judge had a right to hold the defendant in contempt under the facts as hereinabove stated, we must first examine the law with respect to the right granted the respondent by the constitution to refuse to give testimony that might be used against him in a criminal prosecution.

The immunity from self-incrimination is another principle of the common law that finds expression in the constitutions of the many states, (Section 11 of Article I of the Constitution of Louisiana of 1921), and in the Fifth Amendment to the Federal Constitution. Under this constitutional guarantee a mere witness is as fully protected as is a defendant in a criminal prosecution. And while this principle is to be liberally construed in order to give the fullest effect to the immunity and protection thus accorded a witness, if a person voluntarily takes the witness stand, whether as a mere witness or as a party in the case, giving testimony during which he discloses a fact or transaction, he is deemed to waive this immunity and there-

by subjects himself to cross-examination with respect thereto. 147 A.L.R. 256; 58 Am.Jur. 78, Sections 94 and 95. However, where the witness voluntarily takes the stand for the purpose of testifying as to one issue only, he cannot, under cross-examination, be made to testify against his will concerning matters that are wholly unrelated to that issue. 58 Am.Jur. 78, Section 95; 147 A.L.R. 266. See, also, Low v. Mitchell, 18 Me. 372; State v. White, 173 Minn. 391, 217 N.W. 343; Youngs v. Youngs, 5 Redf.,N.Y., 505; State v. Hall, 20 Mo.App. 397; Amherst v. Hollis, 9 N.H. 107; Coburn v. Odell, 30 N.H. 540; Lombard v. Mayberry, 24 Neb. 674, 40 N.W. 271, 8 Am.St.Rep. 234; Commonwealth v. Trider, 143 Mass. 180, 9 N.E. 510; State v. Morgan, 151 Wash. 306, 275 P. 717; and Tucker v. United States, 8 Cir., 5 F.2d 818.

In the instant case the respondent Doran took the stand for the limited purpose of showing that the subject child was not within the jurisdiction of the court within three days prior to the time the suit was filed, and he testified accordingly. Consequently, he subjected himself to cross-examination on that issue alone and he did not waive his right to claim the privilege for all purposes. Of necessity, therefore, when he was cross-examined on another phase of the case about which he did not testify, he had the right to claim the privilege and we think the judge was without right under these circumstances to compel him to answer and hold him in contempt when he refused.

The line of authorities holding that a witness may not refuse to answer questions tending to incriminate him in a jurisdiction other than the one where the privilege is being invoked are inapplicable here because they turn on the theory that the danger of prosecution in the other jurisdiction is unlikely or remote, whereas in the instant case the danger of prosecution in California for kidnapping is not only impending but an actual fact. Doran, at the time he was testifying in this proceeding, was out of jail on bond following his arrest under an indictment returned against him in the State of California for stealing the child. See the annotations at 59 A.L.R. 895, and 82 A.L.R. 1380.

For the reasons assigned, the ruling of the lower court holding the respondent Edward J. Doran, Jr., in contempt of court and sentencing him to serve ten days in jail and ordering him to forthwith surrender the minor child, Edward J. Doran, III, to the petitioner, Mary J. Doran, is annulled and set aside and the case is remanded to the lower court for further proceedings consistent with the views herein expressed.

O'NIELL, C. J., takes no part.

HAWTHORNE, Justice (dissenting).

I am of the opinion that no error was committed by the district judge in his finding the defendant guilty of contempt or in his order to the defendant to produce the child. The constitutional privilege of the writ of habeas corpus is as sacred as the privilege against self-incrimination.

The petition of habeas corpus contains the allegation that the child was wrongfully and illegally taken from the petitioner on September 25, 1948, and that since that date he has been unlawfully denied, and deprived of, his liberty, and was, at the time the petition was sworn to, kept in confinement by Edward J. Doran, Jr., or Mrs. Edward J. Doran, Sr. I concur with the majority opinion that the defendant had to answer this writ "either by producing the minor, if the child was in his custody or was confined by him, * * * declaring positively whether or not he had the minor in his power or custody and by what authority he was detaining him. * * * If the minor was not confined by him and had not been detained by him within three days preceding the service, or had been transferred to the custody of another, then it was Doran's duty to 'state particularly in his answer to whom, at what time, for what cause, and by what authority, he made the transfer.'" If the law compels him thus to answer, there can be no justification for allowing the privilege on cross-examination, for surely these answers would incriminate him as much as the answer to the question propounded to him: "Now, on or about September the 30th didn't you have the child here in Calcasieu Parish?" A rule which would permit the defendant to refuse to answer this question would

ultimately defeat the purpose for which the writ was issued.

In the instant case I consider that justice requires that the defendant answer the question, and that this is paramount to the defendant's privilege.

I respectfully dissent.